Good morning, may it please the Court. My name is Daniel Osborne on behalf of the appellants, the United States Postal Inspectors. The Postal Inspectors represent the law enforcement branch of the Postal Service. They perform the activities ordinarily associated with law enforcement officers. They carry weapons, they conduct stakeouts, they combat fraud, they arrest suspects. This case has been brought as a class action, and Mr. Robert Nigg, one of our class representatives, is here this morning to watch this proceeding. I don't expect that I'll use my full ten minutes, and I'd ask that whatever time I have left be reserved to rebut any remarks made by the government. The arguments are set forth in the briefs, and I think, I hope, cogently so. I'm certainly not going to repeat them here. I'd like to just emphasize a couple of points. As stated in our reply brief, the flaw in the District Court's reasoning in its decision, and that of the Postal Service in advancing their position, is that they start with the statute of 39 U.S.C. 1003C. That's their starting point, and that's the statute that deals with comparable pay. We contend that the District Court erred by not starting the analysis with the Fair Labor Standards Act in 1931. That's the federal statute regarding overtime. The Fair Labor Standards Act was passed in 1938. When it was passed in 1938, it required overtime pay for all employees in the private sector. Don't ask me why, but for some reason in 1938, Congress didn't think it was necessary to require that overtime be afforded to government employees. Maybe it suspected that government employers were nicer and weren't going to require their employees to work more than 40 hours a week, or maybe it suspected that government employees weren't going to work more than 40 hours per week, but in any event... Maybe that's where that phrase came from, good enough for government work or whatever. Forty hours and that's it, Your Honor. But for some reason by 1974, things had changed, and Congress amended the Fair Labor Standards Act to in fact include all federal, state, and local government employees. And that set forth at 29 U.S.C. Section 203. And specifically in 1974, and specifically in Section 203, Congress added an inclusion, an inclusory paragraph or sentence relating to postal inspectors. And it said that the Fair Labor Standards Act, which again affords overtime to certain classes of employees, applies to, quote, any individual employed by the United States Postal Service or the Postal Rate Commission. That's in 203E2B. And it necessarily includes postal inspectors. You have an express inclusion in a federal statute that requires the government to pay postal inspectors overtime. If we were to agree with your position, would the case then be remanded, and then there would be a determination of whether that class of employees is administratively exempt? Yes, Your Honor. I suspect we would be facing another summary judgment motion down the line after some additional discovery. In fact, the government even notes in their brief that we're not here on the administrative exemption argument. We're simply here under this 1003C issue. I suspect that... I would be interested to know what the difference in your duties are from the time that that earlier letter was written saying that you were not administrative employees or... Are you referring to the Department of Labor letter? Were, actually. Yeah. The principal difference in the duties, and I don't believe that issue is before the Court. I don't think we're that far into the case. This is a matter of curiosity, Counsel. The government, the postal inspectors used to perform audit functions, and in fact they required in many instances that the postal inspectors be conversant in accounting so that they could perform those functions. That is no longer an obligation of the postal inspectors, and it used to take up 20, 30, 40 percent of their time. That was the basis for Sprague and for Diamond, the two decisions back in the 70s and 80s. That was the basis for the And that function has been turned over to another entity. I forget who it is, but it's no longer the postal inspectors. And that's the only change, basically. Yes. Is the historical reason that they haven't been paid overtime because of the Department of Labor letter? I suspect that it's the Department of Labor letter and Sprague and Diamond and the fact that nobody decided to file a lawsuit, but they haven't been... The Postal Service has always sort of insisted on acting on its own, and when the Law Enforcement Availability Pay Act was passed 10 or 15 years ago, the postal inspectors, sorry, the inspector general through the legal office wrote a letter and said, you know, we don't want to be part of this amendment that would provide certain pay benefits to our people. We're going to have to pay 203C in 1996 that said you've got to pay the postal inspectors comparably. The Postal Service, I think, typically has tried to stand on its own and run its own operation and didn't want to be lumped in with the other law enforcement folks. You start with this 203E2B that says the postal inspectors are entitled to overtime. The only way the government gets out of paying that is if they can point to a repeal of 203E2B or they can point to an exemption. All the exemptions are in 213 of Title 29. The government has abandoned its repeal argument. They've done us a favor, so we only have to focus on the exemptions. And essentially the government has abandoned its exemption argument. All it says is we've complied with 1003C, this comparable pay, and therefore we're excused from complying with the Fair Labor Standards Act. It's just not that simple. The Postal Service cannot create an exemption to the Fair Labor Standards Act simply by complying with another federal statute. Only Congress can create exemptions to the Fair Labor Standards Act. The Department of Labor can't create them. The Postal Service can't create them. And Judge Taylor didn't have the ability to create one when he ruled in favor of the government two years ago. We've argued that. We've set that argument forth in our brief. The government really hasn't disputed that. Again, they simply point back to we've complied with 1003C and therefore we're excused from compliance with the Fair Labor Standards Act. Judge Taylor in his decision, page 80 of the record, he even acknowledges that the government hasn't really pointed to a specific exemption. He says on March 30th, and this is in Judge Taylor's decision on the motion for reconsideration, again, page 80 of the record, it says, quote, on March 30, 2005, the court granted defendants motion for summary judgment, finding defendants interpretation of 39 U.S.C. 1003C, this is the important part, which effectively exempts postal inspectors from receiving overtime pay under the FLSA as permissible as a matter of law. So Judge Taylor found that they had effectively exempted the postal inspectors from overtime by complying with this other statute. Again, Your Honor, they just don't have the authority to do that. Judge Taylor and the Postal Service, they don't have the authority to ignore the mandate of the federal statute, the Fair Labor Standards Act. For that reason, the decision of Judge Taylor and the district court should be reversed. Thank you. Thank you. Do you have any comment on the discovery issue? I think that's spelled out in our brief, Your Honor, and I think we'll probably revisit some of those discovery issues if we end up back before the district court. Good morning, Your Honors. May it please the Court, I am Assistant United States Attorney Jason Axe, representing the Postal Service. Your Honors, to understand the meaning of the term, it is critical for the Court to understand the historical context that gave rise to its enactment. In 1991, the Postal Inspection Service convened a pay task force to report to the Postal Service about their pay concerns. In the supplemental excerpts of record at page 415, the report stated, quote, the Inspection Service is facing potentially critical human resource problems due to a lack of comparable compensation with other agencies. Quote, there is no rational basis for the differences between the compensation paid to postal inspectors and those paid to other federal agents, considering the nature of the responsibilities of the positions at each agency, the qualifications, training, and degree of risk. Well, in 1994, Congress enacted law enforcement availability pay for criminal investigators, providing for those investigators a 25 percent boost in their pay as long as they averaged two extra hours per counted day over the course of the year. Now, the big difference between availability pay, which is what was given to the investigators in 1994, and overtime under the FLSA, the Fair Labor Standards Act, is that availability pay is paid over the course of the entire year. So as long as those criminal investigators were to average those extra two hours for those work days, then they would get availability pay, meaning a day of sick leave, all the way across the board. This was obviously welcomed by the criminal investigators, and at the same time, it put the postal inspectors further behind their colleagues who were the criminal investigators, the GS 1811 criminal investigators, such as FBI agents, DEA agents. Additionally, with LEAP, availability pay, retirement benefits are calculated based on that. And what generally happens in the government is that retirement benefits are based on the final three years of service. So when you take that 25 percent boost into consideration, you're talking about a pretty substantial pay increase for those GS 1811 criminal investigators. Well, in 1995, the postal inspectors convened a second pay task force, and that task force is discussed in the testimony of James Bells at page 406 of the supplemental excerpts of record. Mr. Bells noted that the inspectors had continuing concerns regarding the payment of the FSLA. In 1996, Congress resolved this issue when they passed Section 1003C. And they stated that the pay would be, had to be comparable to that of comparable levels of work in the executive branch of the government. Let me tell you where I run into a kind of a collision when I get right to that point. Is that we had the FSLA over here with its history and a very specific statement about the inspectors. Then we have Section 1003, which in general talks about comparable worth or comparable payment. But it doesn't say anything about the FSLA. And if we were to adopt your interpretation, it would be like an implied exemption that we would read into the statute over here, which we have to deal with somehow, through a general statute that doesn't even mention what is really the foundation of labor law in this country. So that's where I'm having a statutory difficulty, if you would help me with that. Your Honors, it's obviously difficult because Section 1003C doesn't say explicitly that there is an exemption. There's no language about the FLSA, as the Court has noted. But the ultimate goal in this context, because what had occurred was in 1994, the LEAP, availability pay, was given to criminal investigators, and a specific exemption was written into the FLSA exempting them. And then in 1996, Congress said pay the postal inspectors comparably to these criminal investigators. So what had to occur is that the Postal Service had to comply with 1003C. There's no doubt about that. And it's a question of which is the specific and which is the general, if the Court wants to take that interpretation. But can't you? I mean, I guess that's where you can get comparable pay in amount and still get overtime, can't you? Well, the difference is that those two statutory systems are completely inconsistent because we're talking about pay for the same hours of work. Well, but if what the Section 1003 talks about doesn't talk about any particular comparability, it talks in general about comparability, does it not? That's correct, Your Honor. But the question would have been, had the Postal Service not enacted availability pay, which Congress had granted to those very same criminal investigators just two years earlier, wouldn't that have brought numerous lawsuits to the Postal Service alleging, wait a minute, we're supposed to get availability pay. Congress gave that two years ago to these criminal investigators, and two years later they said pay postal inspectors comparable to the criminal investigators. Why would they have made that comparison if they had known, if they, and they wanted them to be paid FLSA, knowing that in 1994 they had given availability pay to the postal inspectors, I'm sorry, to the criminal investigators, knowing that since 1982, when two courts had determined that they were FLSA exempt. The more direct question is one that we always face when we are looking at what is in effect a repeal. We would have to repeal, in effect, the section of FSLA that basically includes the postal inspectors, wouldn't we? It's not a question of whether the postal inspectors as employees are covered under the Fair Labor Standards Act. That's not what we're saying. What we're saying is that they are exempt by virtue of section 1003C's mandate that they be paid. But see, why would, that's what's so odd, because Congress is well aware of the FSLA, correct? Correct. And so if it was going to put an exemption in to the FSLA, it would mention it. Well, they were, the postal inspectors were already determined by courts to have been administratively exempt. So that wasn't even an issue. The postal inspectors have never been paid overtime under the Fair Labor Standards Act. That's the question now that we're, a question of how many years old is the DOL letter? Decades. Secondly, Your Honor, the statutory occurrence that gives rise to plaintiff's argument was the 1996 creation of the Inspector General Service, talking about SOTIC. That all happened at the same time. The Inspector General created in 1996. At the same time, the statutory section was enacted saying pay these people comparable to criminal investigators. So certainly Congress knew that they were FLSA exempt at the time of the enactment. Why would they choose, of all people, to put in a statutory section saying pay them comparable to these criminal investigators? And I don't think that's really the argument about intent here, who the comparable people would have been. Certainly in the administrative record, we see that the pay that was given to criminal investigators is much higher than park police and uniformed officers of the Customs Service. So assuming that the intention was for them to be paid comparable to criminal investigators, Congress must have known that they weren't taking away anything that would deem them to no longer be exempt from the Fair Labor Standards Act. So in other words, it doesn't appear anywhere in the legislative history, one way or another, to have been determined that something had changed from the postal inspectors. Is it your basic position, then, that the postal inspectors are administratively exempt and 1003C just kind of confirmed it?  1003C, I don't think, speaks to whether they continue to be administratively exempt. I think the assumption made by Congress was that they were administratively exempt. And more importantly, though, if they're going to be given availability pay, they have to be exempt. Because anybody who receives availability pay is specifically exempted by the Fair Labor Standards Act. In other words, you have a section that says there's no one in the country that gets both availability pay and overtime under the Fair Labor Standards Act. So for the postal inspectors to receive both would certainly be contrary to the intent of Congress, because no one in the country receives that, and there's no effective way to do it. So the ultimate issue was, was the determination by the Postal Service permissible? Was it permissible to make a determination that if we're going to do this? Because if they weren't administratively exempt, what would preclude them from getting overtime and availability? The answer to that is that you can't double count those hours, because availability pay and overtime under the Fair Labor Standards Act is an alternative. You have someone who works two extra hours during the course of the day. Under the availability pay system, that goes into a calculation of whether you're going to get 25 percent boost across the board. It goes into a determination of retirement benefits. If they work four hours that day, then they work zero hours the next day, and that averages into that two hours. But what if they were actually working more than this two hours? Are you saying they're not entitled to overtime for that? They're not entitled for overtime for those hours, because it goes into a system that takes that into consideration. And as a result, it takes into consideration retirement benefits, health insurance benefits. It's an overall system that also, based on Senator DeConcini's statements about availability pay, and I welcome the Court to review those, talks about the benefits additionally given to the agencies when availability pay is given to the postal inspectors. Thank you. Thank you, Your Honor. Do you agree that if you're successful in this lawsuit, that the postal inspectors would get only, and they were determined to be exempt, would get only overtime and not availability pay? Well, they don't get availability pay because when the availability pay law was passed in 1994, the postal inspectors said, we don't want to be part of that. So they get availability pay now under a separate thing, but it's not under 1994. Right, but a comparability, don't they get it under some comparability formula? Yes. I'm not sure I understood your question. If they're determined to be exempt, would they still be entitled to overtime? Right. I think the answer is yes. I confess I'm not 100% sure I understand how that plays out. I mean, I'm just trying to understand what, one of the government's arguments is that all of this is kind of woven into a package that exists now in reliance on this statutory scheme, and so you can't really sort of like take out one piece of it. Well, we're not there yet. We haven't established whether or not postal inspector pay is comparable to the pay of other law enforcement people. That's not the issue before the court. That's going to be played out in discovery. And what is comparable? Is it comparable if you get 10% more, if you get 10% less, if you get a pension benefit versus an immediate cash payment for overtime? We don't know how that's going to play out. I can tell you that under the current system, if Mr. Nigg or any of the other postal inspectors work 60 or 70 hours a week, which is not uncommon, they don't get paid for those hours. They don't get a direct cash payment for those hours. If they work nights, weekends, holidays, on scheduled overtime, they don't get paid for that. The other law enforcement folks who get availability pay under this 1994 statute do. May I wrap up? The government cites all this congressional intent. Congress should have known. Congress would have known. Congress, we can assume. There is not a single citation in the government's brief to congressional intent on 1003C and whether 1003C was meant to create an exemption to the Fair Labor Standards Act. And Your Honor asked, if they knew that they were going to, you know, if they wanted to create an exemption, why didn't they just do it specifically? You know what? In 1994, when they created the Law Enforcement Availability Pay Act, they did do it. And they said, all the people now covered by this statute don't get overtime. And they amended the FLSA to incorporate that understanding. They didn't do that when they passed 1003C. No amendment to the FLSA. So they could have, and they didn't. Thank you. Thank you. We appreciate arguments from both counsel. The case of Nigg versus the Postal Service is submitted.
judges: B. Fletcher, McKeown. Whyte